UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RASON HORTON,

                Plaintiff,         Civil Action No. 16-12715
                                             Honorable Matthew F. Leitman
v.                                      Magistrate Judge David R. Grand

PAMELA GREENE,

                Defendant.

_____/

**REPORT AND RECOMMENDATION TO GRANT IN PART
AND DENY IN PART DEFENDANT'S MOTION TO DISMISS [45]
AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [50]**

On July 2, 2018, Plaintiff Rason Horton ("Horton"), an incarcerated person, filed an amended complaint pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights. On October 17, 2018, Defendant Pamela Greene ("Greene") filed a Motion to Dismiss. (Doc. #45). Horton responded to Greene's Motion to Dismiss on January 2, 2019. (Doc. #54). Horton has also filed his own Motion for Summary Judgment. (Doc. #50). Greene filed a response to that motion on January 10, 2019 (Doc. #55), and Horton filed a reply on February 8, 2019. (Doc. #56).

An Order of Reference was entered on March 30, 2017, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (Doc. #9). Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record and declines to order a hearing at this time.

**I.     RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss **(Doc. #45)** be **GRANTED IN PART AND DENIED IN PART** and Plaintiff's Motion for Summary Judgment **(Doc. #50)** be **DENIED**.

**II.    REPORT**

    **A.     Factual Background**

Horton is an inmate of the Michigan Department of Corrections ("MDOC"), and is currently confined at the Carson City Correctional Facility ("DRF") in Carson City, Michigan. He brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging a violation of his First Amendment rights and Fourteenth Amendment right to due process. (Doc. #41). At the time of the events at issue in his complaint, Horton was housed at the Saginaw Correctional Facility ("SRF") in Freeland, Michigan, and Greene was an employee of Aramark, a private company that contracts to provide food services at SRF.

In his amended complaint, which is the operative complaint in this case, Horton alleges that, while incarcerated at SRF, he worked in food services on the serving line, and Greene was the Aramark staff member in charge of that line. (*Id*. at 2). Horton's duties included ensuring that the food servers used proper sized utensils. He alleges that when he brought to Greene's attention that line workers were using improper utensils on August 22, 2014, she responded hostilely by demoting him and filing a misconduct ticket against him, which was later dismissed as frivolous. (*Id*. at 2–3). Due to this misconduct ticket, Horton received a "lay in" notice slip and was unable to work for one week. (*Id*. at 3).

Horton further alleges that after speaking to Greene's supervisors on August 29, 2014, about the incident and Greene's behavior, Greene retaliated by lodging a frivolous "out of place"

2

misconduct ticket against him, dated August 31, 2014. (*Id*. at 3–4). Horton alleges that on that same date, two other inmates heard Greene say, "[T]here's nothing I hate more than a rat, since he wants to go over my head. I'm going to write him up every chance I get whether it's legitimate or not." (*Id*. at 4). As a result of this misconduct ticket, Horton received another "lay in" notice instructing him not to return to work until the disposition of the misconduct.

On September 1, 2014, Horton initiated another meeting with one of Greene's supervisors in order to seek mediation. (*Id*.). The next day, Horton received a third misconduct ticket from Greene, alleging insolent behavior. Horton claims that another prisoner, Thomas, overheard Greene say on September 2, 2014, that "things can go back to normal now that I've written Horton up again." (*Id*.). After a misconduct hearing on September 8, 2014, Horton was found not guilty regarding both the August 31 and September 2, 2014 misconduct tickets. (*Id*. at 5). Because Horton was not found guilty of any of the misconduct tickets issued, he did not suffer sanctions or discipline beyond the loss of work for two one-week periods.

Horton now brings the instant action, alleging that Greene retaliated against him in violation of his First Amendment rights, and that his substantive due process rights under the Fourteenth Amendment were violated. Horton alleges that Green issued the misconducts against him solely in retaliation for his comments to Greene regarding the use of proper utensils and his complaints both verbally to Greene's supervisor and through written grievances. Horton claims Greene expressed her intent to retaliate against him multiple times and contends that throughout his interactions with Greene and her supervisor, he attempted to be respectful and follow prison protocol.

Greene now moves to dismiss Horton's claims, arguing that he fails to state a claim upon which relief can be granted, and that he failed to exhaust his remedies as required by the Prison

3

Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e (2013).  Greene also contends Horton's claims are barred by the affirmative defense of qualified immunity.

Horton has also filed a Motion for Summary Judgment, arguing that there are no genuine issues of material fact because Greene failed to present significant evidence supporting her position.

### B.  Standard of Review

#### 1.  Rule 12(b)(6)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations as true.  *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  That tenet, however, "'is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements."  *Hogan v. Visio Fin. Servs., Inc.*, 2015 WL 3916084, at *3 (E.D. Mich. June 25, 2015) (quoting *Iqbal*, 556 U.S. at 678); *see also Twombly*, 550 U.S. at 555.  Ultimately, "[d]etermining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by pro se litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and their "complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### 2. Rule 56

Federal Rule of Civil Procedure 56 provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

A moving party with the burden of proof (typically the plaintiff) faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier

of fact could find other than for the moving party." *Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986) (internal citations omitted). Accordingly, summary judgment in favor of the plaintiff "is inappropriate when the evidence is susceptible of different interpretations of inferences by the trier of fact." *Harris v. Kowalski*, No. 05-cv-722, 2006 WL 1313863, at *3 (W.D. Mich. May 12, 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

### C. Analysis

#### 1. Greene's Motion to Dismiss

Horton brings two claims against Greene: a First Amendment retaliation claim and a Fourteenth Amendment substantive due process claim. As to his First Amendment claim, Horton alleges that Greene retaliated against Horton for voicing his grievances by issuing frivolous misconduct tickets. As to his Fourteenth Amendment due process claim, Horton alleges that Greene punished him for exercising his constitutionally protected rights. Greene now moves to dismiss, asserting that Horton fails to state a claim upon which relief can be granted, and that he failed to exhaust his remedies. Green also asserts the affirmative defense of qualified immunity.

##### a. First Amendment Retaliation

A successful First Amendment retaliation claim consists of three elements: "(1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999). Greene argues Horton's claim should be dismissed both

6

because Horton did not engage in protected activity and Horton did not suffer an adverse action.[1] A proper evaluation of Greene's arguments requires careful analysis of Horton's allegations.

### i.     Protected Activity

Horton alleges two types of protected activity in the amended complaint.[2]  First, Horton appears to allege that his comment to Greene about other inmates' use of improper utensils was protected. (Doc. #41 at 2–3).  However, in his response to Greene's Motion to Dismiss, Horton makes clear that he is not arguing that this comment was protected conduct.[3]  (Doc. #51 at 6). Second, Horton alleges that his "informal complaints" to Greene's supervisor and the Food Services Director were protected activity. (*Id.* at 6-7).

Horton has "an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  To qualify as a grievance in the prison context, an inmate needn't file a formal or written grievance.  As the Sixth Circuit expressed in *Maben v. Thelen*, use of an informal grievance process does not diminish a

---

[1] Greene's additional arguments regarding failure to exhaust and qualified immunity are discussed below.

[2] It is not clear whether Horton intends to allege that his written grievances were protected conduct. If so, such grievances would clearly be protected. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  However, they would fail the causation prong of a retaliation claim.  Greene's alleged retaliatory action of filing false misconducts occurred on August 22, August 31, and September 2, 2014.  Horton filed his formal grievances on September 3 (Doc. #52 at 4) and September 10, 2014 (*id*. at 9).  Logically, the subsequent grievances filed by Horton cannot have caused Greene to issue the earlier misconduct charges.  Thus, to the extent Horton does attempt to assert claims based on these written grievances, those claims should be dismissed.

[3] Greene argues at length that Horton's complaint regarding the utensils was not protected because it did not fulfill the public concern test outlined in *Connick v. Myers*. *See* 461 U.S. 138 (1983). The Court notes, however, that it "is an open question in the Sixth Circuit" whether the *Connick* test applies to prisoners. *Treadwell v. Almy*, 2013 WL 6668680 at *8 (W.D. Mich. Dec. 18, 2013) (quoting *Lockett v. Suardini*, 526 F.3d 86, 874 (6th Cir. 2008)).  At any rate, because Horton has abandoned any claim based on his statement regarding the utensils, Greene is entitled to summary judgment as to that matter.

7

prisoner's First Amendment rights. 887 F.3d 252 (6th Cir. 2018) (holding a grievance was made when an inmate asked a cafeteria employee why the inmate had been given a smaller portion of food, followed by the inmate's complaint of this food serving to the employee's supervisor). "An inmate has a right to file non-frivolous grievances against prison officials on his own behalf, whether written or oral." *Id.* at 265 (internal quotes omitted). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010). Here, the oral complaints Horton allegedly made to Greene's supervisors about her filing of false misconduct tickets qualify as a "grievance," and therefore as conduct protected by the First Amendment.

Further, the MDOC's grievance policy requires inmates to raise issues orally with staff members before filing formal written grievances. (Doc. #19-2 at 3). When Horton spoke with Greene's supervisors on August 29 and September 1, 2014, he was attempting to resolve the conflict with Greene through the prison's mandated grievance process. As the Sixth Circuit recognized in *Maben*, "It would be an unfair and illogical result for prisons to require initial oral complaints, but then be able to argue that a retaliation claim fails because the prisoner filed an oral, rather than written, complaint." 887 F.3d at 265–66.

Thus, Horton has sufficiently alleged that he engaged in protected activity.

### ii. Adverse Action

Having found Horton adequately alleges that he engaged in protected activity when he tried to raise his concerns with Greene to her supervisors, the next issue is whether he has sufficiently alleged an adverse action. Greene argues Horton could not have suffered an adverse action in the loss of prison employment because inmates do not have a right to prison employment. (Doc. #45

8

at 12). This mischaracterizes the adverse action analysis. The proper inquiry is not whether Horton has a right to his prison job but whether losing that employment would deter an ordinary person from engaging in protected activity. *Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010) (explaining even if a prisoner has no inherent right to avoid the allegedly adverse action, prison staff may not use that action as a means of retaliation). Whether an action would deter an ordinary person from engaging in the protected activity is an objective test. *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999). It does not defeat Horton's claim that he was not in fact deterred, as shown by his subsequent filing of formal grievances. *See Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir. 2007) ("Plaintiffs need not show they were actually deterred from exercising their right to free speech, but rather must show the actions were 'capable of deterring a person of ordinary firmness from exercising his or her right[s].'") (citation omitted).

Here, Horton alleges that after he made his oral grievances to Greene's supervisors, Greene issued two false misconduct tickets against him, on August 31 and September 2, 2014. (Doc. #41 at 4). Horton also alleges that as a result of the misconduct tickets and resulting "lay in" notice, his employment was suspended from August 31 through September 8, 2014. (*Id.* at 4–5). Horton alleges that both of the misconduct tickets were dismissed on September 8, 2014. (*Id.* at 5). The filing of false misconduct tickets has been found to constitute adverse action. *See Maben*, 887 F.3d at 267; *Griffin v. Berghuis*, 563 Fed.Appx. 411, 421 (6th Cir. 2014); *Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002).

Moreover, the potential sanctions Horton could face from the allegedly false misconducts support a finding of adverse action. While Horton did not suffer further disciplinary sanctions from the false misconducts, the court need not consider only those sanctions Horton actually received, since "the mere potential threat of disciplinary sanctions is sufficiently adverse to support

a claim of retaliation." *Scott v. Churchill*, 377 F.3d 565, 571–72 (6th Cir. 2004). Especially when measuring the adverseness of a misconduct ticket, the court considers both the punishment the inmate could have received and the punishment ultimately administered. *Maben*, 887 F.3d at 266. The "out of place" and "insolent behavior" misconduct tickets were minor misconducts and carried the possible sanctions of up to five days of confinement for each incident, loss of privileges for up to 30 days for each incident, and assignment of extra duty. *See* MDOC Policy Directive 03.03.105 (https://www.michigan.gov/documents/corrections/03_03_105_626671_7.pdf at 20). The possibility of loss of privileges and confinement qualifies as adverse action. *Id*.; *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010).

In sum, Horton has sufficiently alleged the adverse action component of his First Amendment retaliation claim.

### iii. Causation

Horton has pled facts sufficient to support a finding of causation. First, Horton alleges that two days after he spoke with Greene's supervisors, Greene approached him and said, "so that's what were [sic] doing now?" "going over my head to my bosses." (Doc. # 41 at 3). When Horton explained he was trying to protect his own interests, he claims Greene responded, "Let's see how much that's going to work for you." (*Id*.). That same afternoon, August 31, 2014, Greene wrote an "out of place" misconduct for Horton when he left work, despite being told by a correctional officer that Horton had permission to leave work. Horton maintains that other prisoners can corroborate Greene's statements. (*Id*. at 4). Horton claims that prisoners Horn and Merriweather asked Greene why she was writing Horton a misconduct and she responded, "there's nothing I hate more than a rat, since he wants to go over my head. I'm going to write him up every chance I get whether it's legitimate or not." (*Id*.). On September 1, 2014 Horton met with one of Greene's

supervisors again. After Greene wrote an "insolent behavior" misconduct on September 2, 2014, Horton alleges that a prisoner Thomas overheard Greene say that "things can go back to normal now that I've written Horton up again." (*Id.*). Taken as true, as the Court must do at this stage of the litigation, *Twombly*, 550 U.S. at 556, these allegations are sufficient to support a finding of causation.

In sum, Horton has pled facts, which, if true, satisfy all three elements of a First Amendment retaliation claim with regard to his oral grievances to Greene's supervisor on August 29 and September 1, 2014. Accordingly, to the extent Greene's instant motion seeks to dismiss Horton's First Amendment retaliation claims based on those particular grievances, it should be denied.[4, 5] However, Greene's motion to dismiss should be granted with regards to claims arising

---

[4] Greene claims qualified immunity insulates her from these claims; however, it is unclear under Sixth Circuit law whether she is eligible for qualified immunity as a private contractor fulfilling an MDOC contract. Qualified immunity insulates government officials performing discretionary functions from civil liability provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Determining whether an employee of a private contractor that is acting under color of state law may herself assert qualified immunity demands a fact-intensive analysis. *United Pet Supply, Inc. c. City of Chattanooga, Tenn.*, 768 F.3d 464, 479 (6th Cir. 2014). *See also Richardson v. McKnight,* 521 U.S. 399, 404–12 (1997) (guards employed by a private prison corporation may not assert qualified immunity); *McCullum v. Tepe,* 693 F.3d 696, 702–04 (6th Cir. 2012) (prison psychiatrist employed by a non-profit entity may not assert qualified immunity); *Harrison v. Ash,* 539 F.3d 510, 521–25 (6th Cir. 2008) (prison nurses employed by a private medical provider may not assert qualified immunity); *Cooper v. Parrish,* 203 F.3d 937, 952–53 (6th Cir. 2000) (private attorney working alongside a prosecutor may not assert qualified immunity). *But see Cullinan v. Abramson,* 128 F.3d 301, 310–11 (6th Cir. 1997) (private attorneys serving as outside counsel to a city may assert qualified immunity); *Bartell v. Lohiser,* 215 F.3d 550, 556–57 (6th Cir. 2000) (employees of a private foster-care agency may assert qualified immunity). Moreover, even if Greene was otherwise eligible for qualified immunity, in 2014 at the time of the events at issue, clearly established law prohibited retaliation for the filing of prison grievances. *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Thus, at least at this stage of the case, Greene's qualified immunity argument fails.

[5] The District Court addressed Greene's failure-to-exhaust defense in a previous order granting Horton leave to file an amended complaint, because "under the circumstances of the case, Greene's failure-to-exhaust defense is best addressed, if necessary, on a motion for summary judgment after

from Horton's first oral complaint to Greene on August 22, 2014, about the utensils, and with regards to Horton's formal written grievances, which post-date Greene's alleged wrongful conduct.

### b. Fourteenth Amendment Claim

Horton also alleges that Greene violated his Fourteenth Amendment right to substantive due process by punishing him for exercising his First Amendment rights. To succeed on a substantive due process claim, a plaintiff must show both: (1) a constitutionally protected property or liberty interest, and (2) government deprivation of that interest through arbitrary and capricious action that "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998). On its face, Horton's claim fails to meet this test's second prong. "Shocks the conscience" is a high bar, satisfied by such government conduct as forcibly pumping a suspect's stomach. *See Rochin v. Cal.*, 342 U.S. 165 (1952). Conduct that violates substantive due process "infringes upon the decencies of civilized conduct, is so brutal and so offensive to human dignity, and interferes with rights implicit in the concept of ordered liberty." *Guertin v. State*, 912 F.3d 907, 923 (6th Cir. 2019) (internal quotations and citations omitted). This "shocks-the-conscience test is the way in which courts prevent transforming run-of-the-mill tort claims into violations of constitutional guarantees." *Id.* Under these standards, Horton's claims fall far short of conscience-shocking, as he claims only the issuance of false misconduct tickets that were later dismissed.

Moreover, plaintiffs should bring constitutional challenges under specific amendments instead of the due process clause when possible. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior,

---

discovery concerning the facts related to the defense." (Doc. #39 at 3). As the claims and evidence related to the failure-to-exhaust defense have not changed since that order, this Court similarly finds that Greene's motion to dismiss on these grounds should be denied.

that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Here, Horton's claims fall squarely under the First Amendment, and he alleges no additional conduct or violation not governed by the First Amendment.

For all of these reasons, Green's motion to dismiss Horton's Fourteenth Amendment claim should be granted.

### 2. Horton's Motion for Summary Judgment

Lastly, Horton's motion for summary judgment should be denied. Because Horton is the plaintiff in this case, to prevail on his summary judgment motion, he must make a showing "sufficient for the court to hold that no reasonable trier of fact could find other than for him." *Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986). In his motion, Horton alleges that Greene issued the misconduct tickets against him because of his grievances, and made several statements to that effect. Though Horton claims to have verification of these statements, Greene denies the allegations. (Doc. #43 at 4–5). As the parties' competing assertions bear directly on an element of Horton's First Amendment retaliation claim, genuine issues of material fact exist. For these reasons, Horton has not overcome the "substantially higher hurdle" he faces as the moving party with the burden of proof, and summary judgment in Horton's favor should be denied. *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss **(Doc. #45)** be **GRANTED IN PART AND DENIED IN PART**; the Court should **DISMISS** all of Horton's claims other than his First Amendment retaliation claim based on his

alleged oral grievances to Greene's supervisor on August 29 and September 1, 2014. **IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Summary Judgment (**Doc. #50**) be **DENIED**.

Dated: February 27, 2019          s/ DAVID R. GRAND
DAVID R. GRAND
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 27, 2019.

                                            s/Eddrey O. Butts
                                            EDDREY O. BUTTS
                                            Case Manager